UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
STAPLES, INC.,

                Plaintiff,                    04 CV 904 (SJ) (KAM)

   - against-                         **MEMORANDUM AND ORDER**

W.J.R. ASSOCIATES, CARMINE
EVANGELISTA, ROBERT H. KANE,
PATRICIA A. REINHARDT as Executrix
of the Estate of William J. Reinhardt,
JAMES SLUYK and TIMOTHY D. KING,

                Defendants.
------------------------------------------------------X

W.J.R. ASSOCIATES and PATRICIA A.
REINHARDT as Executrix of the Estate of
William J. Reinhardt,

                Third-Party Plaintiffs,

   - against-

REALTY EQUITY HOLDINGS 3820, LLC,
NORSTRAND REALTY HOLDINGS,
LLC, TIM ZISS, individually and in his
capacity as Managing Member of Realty
Equity Holdings 3820, LLC, MASSEY
KNAKAL REALTY SERVICES, INC., and
STATE STREET BANK & TRUST
COMPANY,

                Third-Party Defendants.
------------------------------------------------------X

A P P E A R A N C E S:

CERTILMAN, BALIN, ADLER & HYMAN, LLP
90 Merrick Avenue
East Meadow, NY 11554
By:     Robert Connolly, Esq.
Attorney for Third-Party Plaintiff

ARONAUER, GOLDFARB, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022
By:     John C. Re, Esq.
Attorneys for Third-Party Defendant

JOHNSON, Senior District Judge:

Plaintiff Staples, Inc. ("Staples"), a Delaware corporation that maintains its principal place of business in Massachusetts, brings this action against W.J.R. Associates ("WJR"), a New York-based partnership, and other New York residents alleging breach of commercial lease, breach of warranties, and unjust enrichment. In this third party action, WJR asserts that State Street Bank & Trust Company ("State Street"), inter alia, tortiously interfered with WJR's ability to perform on its contract with Staples and breached its contract with WJR. State Street now moves for summary judgment and sanctions. For the reasons stated herein, the motion for summary judgment is GRANTED and the motion for sanctions is GRANTED but only to the extent of costs incurred in filing the instant motions.

## I. BACKGROUND

On or about April 27, 1998, WJR gave a mortgage on the property at 1740 Utica Avenue, Brooklyn, New York, to Citibank, which assigned the mortgage to State Street. In November 2000, WJR defaulted on the mortgage. State Street obtained a foreclosure judgment against WJR in 2002, but chose not to go forward with a foreclosure sale. WJR and State Street entered into a contract by which State Street would forbear on its right to sell the property until May 30, 2002, so that WJR could obtain the financing to purchase the loan documents.

WJR entered into a lease agreement with Staples for the property at 1740 Utica Avenue. WJR alleges that Staples was aware of the foreclosure judgment, and requested a Subordination and Non-Disturbance Agreement ("SNDA") in order to protect its rights as the lessee in the event that WJR lost its interest in the property. WJR furthers alleges that it was State Street's responsibility to provide the SNDA.

On May 30, 2003, WJR was set to close a financing deal with Banco Popular, but Timothy King, one of WJR's partners and its representative for the financing deal, did not appear. The closing was rescheduled to June 2, 2003, and State Street agreed to continue to forbear on its right to conduct a foreclosure sale. On June 2, 2003, King again failed to appear at the closing. State Street had previously contracted to sell the property to Tim Ziss, managing member of Realty

3

Equity, in the event that WJR was unable to obtain the financing necessary to purchase the loan documents. After June 2, 2003, State Street sold the property to Ziss in a foreclosure sale.

In its Third-Party Complaint, WJR alleges that State Street violated the terms of the forbearance contract and tortiously interfered with its dealings with Staples by failing to provide the SNDA and refusing to accept payment on June 2, 2003. State Street has moved for summary judgment on the grounds that: (1) by virtue of U.S. Bank National Association's ("U.S. Bank") acquisition of State Street's trust business in December 2002, State Street is the incorrect party for a claim based on a transaction that occurred in May and June of 2003 and (2) WJR's claims are contradicted by documentary evidence.

## II. JURISDICTION

This Court has jurisdiction over the original action between Staples and WJR because that case involves complete diversity and a demand in excess of $75,000. 28 U.S.C. 1332(a)(2). Under 28 U.S.C. § 1367(a),

> [e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. 1367(a).  Accordingly, this Court asserts supplemental jurisdiction over the instant action.

### III.  SUMMARY JUDGMENT

### A.  STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed.R.Civ.P. 56(c).  Material facts are those that may affect the outcome of the case.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court views the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).  If there is enough evidence such that a jury could return a verdict for the nonmoving party, then there is a genuine dispute as to a material fact.  <u>Id.</u>

A party seeking summary judgment bears the initial burden of establishing the basis for its motion.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The movant must identify the portions of the pleadings and discovery that demonstrate the absence of a genuine dispute of material fact.  <u>Id.</u>  When the movant's opponent will bear the burden of proof at trial, the movant can prevail merely by demonstrating a lack of evidence to support the opponent's claim.  <u>Id.</u> at 325.  If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.

56(e).

## B. DISCUSSION

**1. Is State Street the correct party?**

Defendant State Street contends that, as a result of U.S. Bank's acquisition of State Street's trust business in December 2002, it cannot be held responsible for anything that occurred in April 2003. While Defendant State Street's argument seems correct, it is easy to see why there is considerable confusion as to whether State Street is the correct party. Based on the parties' exhibits, although U.S. Bank acquired State Street's trust business, it decided to retain not only State Street's business character, but also its legal counsel and personnel. See, e.g., Beard Aff. at ¶ 1-2. By way of analogy, this is akin to a McDonald's changing its name to McDowell's, but having the same people continue to sell hamburgers. One could be excused for thinking that McDowell's and McDonald's were one and the same.

The only evidence of U.S. Bank's acquisition of State Street's trust business is provided in affidavits of representatives of State Street, and this Court is reluctant to rely on a party's self-serving statements in furtherance of a motion for summary judgment. The issue is complicated by a letter dated April 1, 2003, which indicates that State Street was still the trustee for WJR's mortgage. Defendant State Street passes this letter off as a simple drafting error. This Court is reluctant to accept such an explanation in deciding a motion for summary judgment.

However, even were this Court to decide that State Street is the incorrect party, WJR would presumably merely amend its Third Party Complaint to include U.S. Bank. In that situation, we would inevitably arrive at the same point we are at now, that being a motion for summary judgment based on a lack of evidence to support the claim. Accordingly, we ignore the issue of whether State Street is the correct party to avoid this inevitable redundancy, and turn immediately to the question of whether there is any support for WJR's claims against the trustee for the mortgage.

**2.     WJR has failed to produce any evidence to support its claims**

WJR's claims that the Trustee[1] breached its contract/fiduciary duty and tortiously interfered with WJR's business relationship. The Trustee moves for summary judgment on the grounds that WJR has failed to provide any evidence of its claims and that, in fact, WJR's claims are contradicted by the record. Celotex, 477 U.S. at 323.

    **a.     Breach of Contract/Fiduciary Duty**

As a matter of law, there is a breach of contract when one party to the contract performs its obligation but the other party wrongfully refuses to accept

---

[1] Even though the issue of whether the proper party is State Street or U.S. Bank has not been decided, the parties agree that the entity that acted as the trustee for the mortgage was either State Street or U.S. Bank. Therefore, the entity that acted as the mortgagee is hereinafter referred to as "the Trustee."

performance.  See 1776 Assocs. Corp. v. Broadway West 57th Street Assocs., 181 A.D.2d 601 (1st Dept. 1992).  WJR claims that the breach of contract occurred when the Trustee constructively refused to accept payment from WJR's lender, Banco Popular, on June 2, 2003.  However, this allegation is contradicted by the record.  In a letter dated July 15, 2003, Ralph Bumbaca, vice president for Banco Popular, informed WJR that it was prepared to close on the refinancing loan, but it could not close the deal because King was absent and otherwise failed to "provide consent for the partnership to incur debt."  Re Aff. Ex. Q.  The same reason is given for the failure to close on June 2, 2003.  Id.  Nowhere in the letter does Mr. Bumbaca indicate that John Dinan, the Trustee's representative, refused to receive payment until after Dinan was able to confer with King.

      WJR points to the affidavit of Mark Noto, senior vice-president at Banco Popular, as evidence that the Trustee refused to accept the payment.  Specifically, WJR points to the portion of Mr. Noto's affidavit in which he asserts that he contacted "Mr. Dinan to reassure him that we would close today and make their deadline.  He stated that first he needed to speak with King before any funds could be accepted."  Noto Aff. at ¶ 8.  However, Noto also states that because "we were unable to reach Dinan *or Mr. King* the closing did not occur."  Id. at ¶ 9 (emphasis added).  Even had Dinan faithfully returned each and every one of Noto's calls, the deal could not have closed because King was unavailable.  And as the Trustee

correctly points out, it would be absurd to assume that Banco Popular would loan millions of dollars to WJR without a representative of the partnership present at or consenting to the closing. The simple fact is that WJR was in no position to make payment on June 2, 2003, regardless of Banco Popular's willingness to aid it in that act. Accordingly, the Trustee cannot be held liable for a breach of contract for failing to accept proper performance because the undisputed record shows that WJR was unable to tender payment on June 2, 2003.[2]

Further, WJR suggests that the Trustee breached the contract by refusing to accept performance after June 2, 2003. However, once the June 2, 2003, deadline had passed, the Trustee was no longer under any obligation to forbear on its right to sell the property. Therefore, even if WJR offered payment on June 4, 2003, which the record indicates it did not,[3] the Trustee had no obligation to accept payment because WJR had already failed to perform within the time limitations set by the contract.

Because there is no factual basis to believe that the Trustee breached a

---

[2] WJR further contends that it was prepared to purchase the loan documents on June 2, 2003, but the Trustee prevented it from delivering payment because it refused to provide the necessary wire instructions. This, too, is contradicted by the record. In a letter dated May 20, 2003, the Trustee provided WJR's counsel with all the information necessary to wire the funds.

[3] Mr. Bumbaca's letter indicates that Banco Popular was prepared to close the refinancing loan on June 4, 2003, but King was not present on that day either.

contract/fiduciary duty, the Trustee is entitled to summary judgment.

### b. Tortious Interference

The Trustee contends that the evidence is insufficient to support a claim of tortious interference. In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted towards intentional, unjustified procurement of a breach of the third-party contract; and (4) injury to the relationship. See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996); see also Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir.1994).

In WJR's Third-Party Complaint, WJR claims that the Trustee tortiously interfered with its contract with Staples because the Trustee failed to provide the SNDA "so that the successor mortgagee [...] would not be bound or obligated under the existing lease with Staples." Compl. at ¶ 51. It is now undisputed that the Trustee did, in fact, provide the SNDA. Re Aff. Exs. J and L. WJR admits that its claim for tortious interference for failing to provide the SNDA is factually invalid. WJR Mem. of Law at pp. 8-9.

WJR further contends that the Trustee was part of a conspiracy between King and Ziss to wrest control of the property from WJR in which King would willfully absent himself from the refinancing closing so that Ziss could purchase

10

the property in a foreclosure sale. There are several problems with this accusation. First, even assuming that there was a conspiracy, there is absolutely no evidence that the Trustee was involved. Indeed, much of the evidence points to a contrary conclusion. For example, if the Trustee did have a hand in the conspiracy, there would be no reason for it to grant an extension from May 30, 2003, to June 2, 2003. Indeed, if the Trustee was complicit in the conspiracy, it would have anticipated King's absence on May 30, 2003, and would immediately move to strictly enforce the deadline.

Second, there is no evidence that the Trustee acted in bad faith. The Trustee had the authority to commence a foreclosure sale at any time it wished, and had no obligation to agree with WJR to delay that action. Connolly Decl. Ex. D. Even so, the Trustee entered into an agreement under which the Trustee agreed to sell the loan documents to WJR so long as payment was received before a certain deadline. Connolly Decl. Ex. M. WJR also suggests that the Trustee's negotiations with Ziss displayed bad faith because the Trustee already had an agreement in place with WJR. However, the Trustee's dealings with Ziss can only be described as a backup plan in the event that WJR would be unable to obtain the financing necessary to pruchase the loan papers. This is entirely consistent with the Trustee's eagerness to resolve the defaulted mortgage quickly and sell the property as soon as possible. Connolly Decl. Ex. K.

Third, WJR fails to point to any evidence that the Trustee had anything to gain from the conspiracy. Arguably, there is evidence of a conspiracy between King and Ziss, such as the check that Ziss made out to King in the amount of $215,000, but there is no indication that any payment was made to the Trustee or that the Trustee had anything to gain from selling the loan documents to Ziss instead of WJR.

Therefore, there is no evidence that the Trustee had any involvement in the failure to close the refinancing deal. In fact, it is clear from WJR's own exhibits that the failure to close the refinancing deal was not caused by the Trustee, but rather by the infighting between partners of WJR. Connolly Decl. Ex. R. As a result, no reasonable juror could conclude that the Trustee tortiously interfered with WJR's contract with Staples, and the Trustee is entitled to judgment as a matter of law.

## IV. SANCTIONS

State Street seeks an award of costs and counsel fees pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), 28 U.S.C. § 1927 and the Court's inherent power on the ground that WJR's counsel, by continuing with this third-party action, has maintained an action despite the fact that its claims have been refuted by documentary evidence.

The district court's power to impose sanctions, whether under § 1927 or

pursuant to its inherent authority, is discretionary, and will only be reviewed for an abuse of discretion. See <u>Disilvestro v. United States</u>, 767 F.2d 30, 32 (2d Cir.1985) (per curiam) (applying an abuse of discretion standard in reviewing district court's decision). However, under any rubric, courts should exercise great caution when determining whether sanctions are appropriate. See <u>Knipe v. Skinner</u>, 19 F.3d 72, 78 (2d Cir.1994) ("Rule 11 sanctions should be imposed with caution"); <u>Mone v. C.I.R.</u>, 774 F.2d 570, 574 (2d Cir.1985) (§ 1927 "should be construed narrowly and with great caution"); <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991) (the inherent power of the federal courts "ought to be exercised with great caution").

Courts may impose sanctions pursuant to their inherent authority to punish "conduct which abuses the judicial process." <u>Chambers</u>, 501 U.S. at 44-45. Also, § 1927 permits attorneys who engage in reasonable or vexatious litigation to be held personally liable for the excess costs and attorneys' fees their conduct causes. However, in order to impose sanctions pursuant to § 1927 or the court's inherent authority, the movant must make a "clear showing of bad faith." <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1273 (2d Cir.1986). State Street has failed to make such a showing and thus sanctions under § 1927 or pursuant to the Court's inherent authority would be inappropriate.

However, under Rule 11, sanctions *must* be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims

13

were "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2). Further, Rule 11 authorizes sanctions for pleadings that are entirely frivolous or submitted "for any improper purpose, such as to harass or to cause unnecessary delay or *needless increase in the cost of litigation*." Fed.R.Civ.P. Rule 11(b)(1) (emphasis added). Moreover, the objective inquiry required by Rule 11 does not require a finding of bad faith. See Eastway Constr. Corp. v. New York, 762 F.2d 243, 254 (2d Cir.1985).

It is patently clear that WJR had absolutely no chance of success once discovery had been completed because the documentary evidence clearly showed that the Trustee had delivered the SNDA, had given WJR the wiring information, and had honored its contract with WJR. In such a case, Rule 11 has been violated and sanctions are appropriate.

State Street requests sanctions in the amount of $72,085.05 for participating in this action, bringing the motion for summary judgment, and bringing the motion for sanctions. However, this request is excessive. Under Rule 11, sanctions should be "limited to what is sufficient to deter repetition of such conduct." Fed. R. Civ. P. 11(c)(2). This Court finds that WJR should not have pursued an action against State Street after it became clear that there was no factual basis for its claims. This should have been clear to WJR's attorneys on April 14, 2006, the date of a letter

14

from State Street's attorney's to WJR's attorneys which included documentary evidence that contradicted the last of WJR's remaining claims. Therefore, sanctions are granted only for the attorney's fees incurred in bringing the motion for summary judgment and the motion for sanctions.

## V.  CONCLUSION

For the forgoing reasons, State Street's motion for summary judgment is hereby GRANTED.  State Street's motion for sanctions is also granted, but only as to costs incurred in filing the two instant motions.


SO ORDERED.

Dated: March 30, 2007                                                   _____
       Brooklyn, New York                                                       Senior U.S.D.J.