UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STAPLES, INC., and STAPLES THE OFFICE
SUPERSTORE EAST, INC.,

               Plaintiffs,                             04 CV 904 (SJ) (ALC)

    - against-                                     <u>MEMORANDUM AND</u>
                                                                 <u>ORDER</u>

W.J.R. ASSOCIATES, CARMINE
EVANGELISTA, ROBERT H. KANE,
PATRICIA A. REINHARDT as Executrix
of the Estate of William J. Reinhardt,
JAMES SLUYK and TIMOTHY D. KING,

               Defendants.
--------------------------------------------------------X

W.J.R. ASSOCIATES and PATRICIA A.
REINHARDT as Executrix of the Estate of
William J. Reinhardt,

               Third-Party Plaintiffs,

    - against-


REALTY EQUITY HOLDINGS 3820, LLC,
NORSTRAND REALTY HOLDINGS,
LLC, TIM ZISS, individually and in his
capacity as Managing Member of Realty
Equity Holdings 3820, LLC, MASSEY
KNAKAL REALTY SERVICES, INC., and
STATE STREET BANK & TRUST
COMPANY,

               Third-Party Defendants.
--------------------------------------------------------X
A P P E A R A N C E S:

TRACHTENBERG RODES & FRIEDBERG LLP
545 Fifth Avenue
New York, NY 10017
By:    Leonard A. Rodes, Esq.

BEE READY FISHBEIN HATTER & DONOVAN, LLP
170 Old Country Road, Suite 200
Mineola, NY 11501
By:    Robert Connolly, Esq.

THE TZANIDES LAW FIRM, PLLC
275 Madison Avenue, Suite 1000
New York, NY 10016
By:    Kirk P. Tzanides

COFFINAS & COFFINAS, LLP
37 Congers Road, 2nd Floor
New City, NY 10956
By:    George G. Coffinas

BAUMAN KATZ & GRILL LLP
28 West 44th Street, Suite 900
New York, NY 10036
By:    Steven Cramer

JOHNSON, Senior District Judge:

On March 3, 2004, Plaintiffs Staples, Inc. and Staples The Office Superstore East, Inc. ("Plaintiffs" or "Staples") filed the instant action in diversity alleging breach of a commercial lease, breach of warranties made in connection with that lease, and unjust enrichment. The complaint ("Complaint") named several defendants, including W.J.R. Associates ("WJR") and some of its partners and/or former partners, including William Reinhardt ("Reinhardt"), and Timothy King ("King"). Prior orders issued in this action provide a general outline of the

relationship between the parties and familiarity therewith is assumed. (Docket Nos. 208-209.) For the purpose of the instant motions, however, additional background and supplementation is in order.

WJR is a New York general partnership formed in 1988 to purchase and operate a commercial lot located on Utica Avenue in Brooklyn (the "Property"). In 1998, WJR refinanced its original $2.2 million mortgage, borrowing approximately $3.75 million from Citibank (the "Mortgage"). The mortgagee under this loan was State Street Mortgage Bank & Trust Company ("State Street" or "Mortgagee"). The following year, WJR lost both tenants to the Property, and, predictably, began to lose revenue. WJR stopped making payments and defaulted on the mortgage in November 2000. In February 2001, State Street commenced a foreclosure action in the Supreme Court of Kings County (the "State Court Action") and in connection therewith, filed a notice of pendency with the clerk of the court. The State Court appointed a receiver (the "Receivership Order") requiring a temporary receiver to collect all rents and profits of the Property during the pendency of the foreclosure action and enjoining WJR "from interfering in any manner with the property or its possession." (Rhodes Aff. Ex. J. at 3.)

*The Staples Lease*

On April 1, 2002, a judgment of foreclosure was entered (the "Judgment of Foreclosure"). In it, the State Court ordered, <u>inter alia</u>, that (1) State Street was due

$4,557,857.89; (2) the Property be sold at public auction; (3) the liability of any of the individual defendants, if any, would be determined at a later hearing; and (4) the individual defendants be "forever barred and foreclosed of all rights, claim, lien, title, interest and equity of redemption in the said mortgaged premises." Notwithstanding the language in both the order appointing a receiver and the foreclosure sale and judgment, WJR began to negotiate both with State Street (mortgagee in foreclosure) and Staples. WJR sought to retain control of the Property and then lease the Property to Staples.

Drafts of the would-be lease indicate the parties' intent that WJR would "provide non-disturbance agreements, in a form satisfactory to Staples, from any existing mortgagees and/or prime landlords on or before execution of the lease." (Rodes Decl. Ex N at DX ("DX") 2 at 3.) The purpose of this non-disturbance agreement ["SNDA"] was understood to be essential to protecting "Staples' leasehold interest in the premises in the event that W.J.R. . . . was ever divested of its title to the subject property due to foreclosure." (Pl. R. 56.1 Stat. ¶ 22.) Negotiations involved King, a WJR partner, and an in-house attorney from Staples, Robert Hirsch ("Hirsch").

On January 16, 2003, following an inquiry by Hirsch, King arranged for a report of WJR's title in the Property (the "Report") to be sent to Staples, prior to execution of the lease. The Report indicates that the Property is "Subject to a

Judgment of Foreclosure filed 2/20/01." According to his deposition testimony, Hirsch did not review the Report for

> [t]wo reasons. One, [Staples was] getting full representations and warranties regarding title authority and financing in the lease and that there were no documents out there that conflicted with our rights under the lease and that there were no mortgages out there for which we were not going to get an SDNA. And secondly, most landlords, as soon as they get a Staples lease, which is a credit lease, refinance.

(Cramer Decl. Ex. C at 40-41.) However, the SDNA was never delivered to Staples for execution. It was signed by State Street's agent and delivered to King for signature by WJR, which appears not to have happened.

The lease between WJR and Staples was signed on March 4, 2003 (the "Lease"). In it, WJR warranted, inter alia, that (1) it "ha[d] good title to the premises;" (2) "there [were] no claims, causes of action or other proceedings pending or threatened in respect to the ownership, operation or environmental condition of the Center;" and (3) "if the premises is, as of the date hereof, subject to any mortgage, trust deed or ground lease, Landlord shall provide Tenant with an agreement executed by such lien holder which shall assure Tenant's right to possession of the Premises and other rights granted under this Lease." There is no indication in the record that either the State Court or the rent receiver were aware of or approved the Lease.

*State Street's "Time is of the Essence" Offer*

State Street submitted an offer for the Property to the WJR partners King and Reinhart on April 1, 2003. The offer required WJR to, <u>inter alia</u>, remit a payment of $3,700,000 to State Street. Payment of $100,000 was due by April 3, 2003, with a closing date of no later than May 30, 2003. The offer stated that "<u>time [was] of the essence</u>." (DX at 59) (emphasis in original). In order to come up with the $3.7 million, WJR turned to Banco Popular. Based at least in part on WJR's lease with Staples and its concomitant anticipated revenue stream, Banco Popular became interested in and willing to lend WJR $4,000,000 specifically for use in the proposed WJR-State Street agreement.

However, notwithstanding the "time is of the essence" clauses in State Street's offer, King failed to attend two scheduled closings with Banco Popular. After the second failed attempt to close, State Street sold its interest to Realty Equity Holdings 3280, LLC, Nostrand Realty Holdings and Tim Ziss (the "Ziss Parties"). The Ziss Parties also entered into agreements with the WJR partners and King which provided, in part, that King, Reinhardt and WJR would not interfere with a foreclosure sale (the "Ziss Agreements").

Moreover, in one of the Ziss Agreements, King was promised $75,000 if the Ziss Parties were able to structure a different lease with Staples that provided for a $6 per foot rental increase over the existing one. As a result of the actions (or nonactions, as the case may be) of King following these agreements, he received a

total of $215,000 from REH and/or Ziss. Following their acquisition of the Property, the Ziss Parties informed Staples by letter that they would not honor the Lease. By that time, Staples had spent almost $1,700,000 in improvements to the Property. Staples then negotiated a new lease with the Ziss Parties, containing terms less favorable to Staples than the one it entered with WJR earlier that year.

Staples filed the instant lawsuit against the WJR Defendants and King for, <u>inter alia,</u> breach of contract and breach of warranties. The WJR Defendants thereafter filed a third-party complaint against Ziss Parties, alleging that the Ziss Parties tortuously interfered with its contractual relations with Staples. WJR also filed cross-claims for breach of fiduciary duty against King.[1]

*The Motions*

Presently before the Court are four motions. Plaintiffs move for partial summary judgment, arguing that WJR is liable, as a matter of law, for breach of the covenant of quiet enjoyment, breach of express warranties contained in the Lease, and breach of its obligation to provide an effective non-disturbance agreement. Plaintiffs alternatively assert a quasi-contractual claim of unjust enrichment. The WJR Defendants move for summary judgment, arguing that it fulfilled its obligations under the Lease. King has moved for partial summary judgment, claiming the Lease is voidable. Finally, the Ziss Parties, third-party defendants, move for summary

---

[1] Other parties, against whom claims were filed by Staples and/or the WJR Defendants, have heretofore been dismissed from this action.

judgment of the WJR Defendants' third-party complaint on the grounds that the Lease is a "void" or "voidable" contract which cannot give rise to a tortuous interference claim. (These four motions shall be referred to collectively as the "Motions.") Based on the submissions of the parties, and for the reasons stated below, the Motions are DENIED.

DISCUSSION

I. Summary Judgment Standard

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact,

summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

II. Validity of Lease

In support of its argument that the Lease was valid and enforceable, Plaintiffs state that "neither the filing of a foreclosure action nor the entry of a foreclosure judgment diminishes existing property interests including those of the mortgagor." Thus, the argument goes, WJR retained the right to convey a leasehold interest to

Staples notwithstanding both the language in the order appointing a receiver and the Foreclosure Judgment and Sale forever barring WJR and its partners from all "rights, claim, lien, title, interest and equity of redemption" in the Property.

      A.  Effect of Notice of Pendency

As stated, supra, following the filing of the foreclosure action, State Street (plaintiff-mortgagee therein) filed a notice of pendency with respect to the Property. "By merely filing a notice of pendency, the world is put on notice" that "if they then buy the realty or otherwise rely on the [mortgagor-in-foreclosure's] right, they do so subject to whatever the action may establish as the [mortgagee's] right." Goldstein v. Gold, 106 A.D.2d 100 (N. Y. App. Div. 1984) (internal citations omitted); see also N.Y. C.P.L.R. 6501; Blanchard v. Eisenpress, 200 F. Supp. 2d 334 (S.D.N.Y. 2002) ("Any person whose conveyance is reported after the filing of a notice of pendency is bound by all proceedings taken in the same actions after such filing to the same extent as a party.") (internal citation omitted). Were this not the case, and courts were

> required to consider leasehold interests created after the filing of a notice of pendency, foreclosure plaintiffs [would have to] constantly update their searches, seek leave of the court to add new parties, and go through the entire time-consuming process of bringing those parties into the litigation, resulting in inordinate delay and the ultimate inability to assure unimpeded possession at the proceeding's conclusion.

Kenneth L. Gartner, A Heated Issue: Post-Foreclosure Eviction of Post-Notice of Pendency Tenants, New York Law J., April 12, 2000, 5 col. 2.  Accordingly, the foreclosure action would establish the rights of State Street (or its successor in interest) with respect to the Property, and Staples would be bound by that determination.

The dispute in this case is based on the rights and obligations of the parties following the filing of the notice of pendency.  Some courts have held that a conveyance made after both the filing of a notice of pendency and a judgment of foreclosure and sale is a "nullity," or is "voidable," or "void."  Legally, these terms are not interchangeable.  Nevertheless, in the context of conveyances made by a mortgagor during the course of (or after) a foreclosure proceeding, courts have not utilized these terms consistently.  Compare SRF Builders Capital Corp. v. Ventura, 224 A.D.2d 678 (N.Y. App. Div. 1996) (transfer during foreclosure to a company owned by the mortgagor was a "nullity"); with Metropolitan Homes, Inc. v. Green Point Savings Bank, 234 A.D.2d 524, 525 (N.Y. App. Div. 1996) ("[U]pon entry of the judgment of foreclosure and sale . . .the mortgagor had no title to convey."); Security Pacific Nat'l Trust Co. v. Dusevic, 178 Misc.2d 874, 877 (N.Y. Sup. Ct. 1998) ("[A]ny . . . conveyance subsequent to the filing of the notice of pendency would not be valid pursuant to the terms of the Judgment of Foreclosure and Sale."); and West 56th and 57th Street Corp. v. Pearl, 242 A.D.2d 508 (N. Y. App. Div.

1997) (lease entered into after notice of pendency held voidable). These cases suggest that Plaintiffs' argument that the Lease was enforceable is without merit.

### B. Mortgagor's Rights Pending Finality of Foreclosure Action

Another line of cases, including the only relevant pronouncement from the New York Court of Appeals – albeit a dated one – hold that a mortgagor-defendant in a foreclosure action retains the right to convey the property until the hammer drops at the foreclosure auction, notwithstanding language in earlier court orders "forever barr[ing]" the mortgagor from all rights with respect to the property:

> The provision barring others of their interest in, or of their rights of equity of redemption in, the mortgaged premises, of necessity relates to the <u>final concluding act</u>-that of a sale of the premises. <u>Until that time</u> the mortgagee or the owner of the equity of redemption may redeem, and persons having judgment liens thereon may sell upon execution, notwithstanding the judgment; but, as soon as the sale is made, confirmed, and conveyance delivered, that provision of the judgment becomes operative and of full force, and the parties to the action are forever thereafter barred and foreclosed of all their right, title, interest, and equity of redemption.

<u>Nutt v. Cuming</u>, 49 N.E. 880, 881 (N.Y. 1898) (emphases added). Thus, the "forever barred" language is said to apply as of the date of sale. See <u>Carnavalla v. Ferraro</u>, 281 A.D.2d 443, 444 (N.Y. App. Div. 2001) ("Although the mortgagor entered into the contract to sell the property to the plaintiffs after a judgment of foreclosure and sale had been entered against him, the entry of such a judgment does not divest the

mortgagor of his title and interest in the property until the sale is actually conducted."); Banque Arabe et Internationale D'Investissement v. One Times Square Ltd. Partnership, 223 A.D.2d 384, 384 (N.Y. App. Div. 1996) ("The language of the order and judgment of foreclosure herein does not require departure from the general rule that the right and interest of a defendant joined in a foreclosure action becomes barred and foreclosed upon the actual sale and conveyance made thereunder and not on the date of entry of the judgment of foreclosure.") (citing Dulberg v. Ebenhart, 68 A.D.2d 323 (N.Y. App. Div. 1996)); Dulberg, 68 A.D.2d at 327 ("Under the ordinary judgment of foreclosure and sale, the right and interest of a defendant becomes barred and foreclosed by virtue of the sale of the premises and the conveyance made thereunder, not upon the date of the entry of the judgment.") (citing Nutt); Bruce J. Bergman, Bergman on New York Mortgage Foreclosures, §§ 2.05[1], 2.21 (2001).

While the second line of cases suggest that WJR could convey the Property prior to the actual foreclosure sale, that fact alone would not render the Staples Lease valid. In light of the State Court Action, the absence of evidence of whether or not the parties followed the proper procedures for entering into the Lease is troubling. There is no evidence that the Staples lease was recorded, as required by law. Blanchard, 200 F. Supp. 2d at 337-8. ("Leasehold interests are covered by New York Property Law Article 9 and are thus both required to be recorded and are affected by the filing of a notice of pendency."); see also N.Y. Real Prop. § 294. And moreover,

while the state court required that a receiver collect all rents and profits related to the Property, the Court is unable to determine whether that occurred in this case, or whether the parties structured an agreement to circumvent the Receivership Order and the approval of the lease by the state court.  While there may be circumstances under which a mortgagor in foreclosure may convey the property to another, this Court should not enforce an agreement entered into for illegal purposes or in contravention of public policy.  See Attridge v. Pembroke, 235 A.D. 101, 102 (N.Y. App. Div. 1932) ("The refusal of the courts to enforce contracts which are against public policy is not based upon any desire to relieve a party from the obligation which he has assumed, but rather upon the theory that such an agreement is injurious to the interests of society . . . and that the only wa[y] to stop the making of such contracts is to refuse to enforce them."); see also Village of Upper Nyack v. Christian Missionary Alliance, 540 N.Y.S.2d 125 (N.Y. Sup. Ct. 1988) ("[P]ublic policy has been defined as the principle which declares that no one can lawfully do that which has a tendency to be injurious to or against the public good will or welfare.") (citation omitted).

    None of the Motions adequately address the impact, if any, of the potential procedural shortcomings in approving and recording the Lease even though each motion turns on the validity and force of the Lease.  Staples asserts that WJR's mortgagee knew of lease negotiations following the appointment of a receiver, which raises the question of whether the parties sought to circumvent the Receivership

Order. Staples also argues that the WJR defendants and King acted in bad faith in failing to deliver the SNDA, disavowing the Lease and accepting payment from the Ziss Parties in exchange. Any liability of the WJR defendants and/or King for their actions in contracting with the Ziss Parties also turns on the validity of the Lease. Similarly, the Ziss Parties' motion for summary judgment on the third-party claim of tortuous interference also relies on the validity of the Lease. Because each of the motions turns on the existence and enforceability of the Lease, the motions must be denied. See, e.g., SRF, 224 A.D.2d at 679 (post-foreclosure transfer deemed "nullity" when it was entered into to avoid order of bankruptcy court); cf. In re Cromer, 153 B.R. 391, 397 (Bankr. E.D.N.Y. 1993) ("Illegal consideration consists of any act or forbearance or promise of the same, which is contrary to law or public policy.") (citing N.Y. Jur.2d Contracts § 139).

III.  Conclusion

For the foregoing reasons, Staples' motion for partial summary judgment is hereby DENIED; WJR's motion for summary judgment is DENIED; King's motion for partial summary judgment is DENIED; and the Ziss Parties motion for summary judgment is DENIED.

SO ORDERED.

DATED: March 30, 2010           _____/s/_____
       Brooklyn, New York            Sterling Johnson, Jr., U.S.D.J.